Quinn is calling case number 424-1035 Quinn v. Helms. With counsel for the appellant please state your appearance. I'm Sean Cusack for defending the appellant Mason Helms. And for the appellee? Julie Galassi for the plaintiffs and the company is Bramble. Alright, you may proceed with your argument. Thank you, your honors. May it please the court, counsel. As just stated, my name is Sean Cusack. I represent the defendant appellants Mason Helms and Carrie E. Black. We respectfully are requesting that this court reverse the judgment of the Woodford County Circuit Court granting summary judgment in favor of the plaintiff's appellees on both restrictive covenant enforcement and private nuisance grounds. Today I will address number one, why the restrictive covenant is unenforceable as applied as a matter of law. Why, even if it's enforceable, the fence that my clients have installed on their property complies with the covenant. And number three, why the private nuisance ruling is contrary to Illinois law. Four, the insufficiency of the plaintiff's evidence, including their expert's report. Just by way of background, very briefly. Counsel, this case came off of a summary judgment ruling, correct? It did, your honor. Are we to be weighing evidence at a summary judgment? No, we're just, we're going to talk about the law as a factual, I mean, the law as it applies to what's happened. Okay. Just by way of background, the Helms purchased their home, Elizabeth Point Subdivision, in October 21. The subdivision has restrictive covenants, and we admit their existence, and my clients knew about them prior to purchasing the home. What appealed to them in purchasing the home was the fact that they were able to put in a pool if they so choose. On October 17th of 2021, Mr. Helms notified his neighbor about plans to build a fence. The record shows that no homeowners association ever existed, and the developer long ceased enforcing the covenants. As a result, the Helms proceeded to construct a fence, anticipating pool installation, and the record shows that. Not only my defendant's testimony, but also the language of the developer, Don Permees. So they went ahead with their fence. They later, after this litigation, submitted plans, and those plans were approved. Again, going back to the developer, Don Permees, he testified, and was subject to cross-examination in his evidence deposition, that regardless, he would have approved the fence. He had been out to see it, and he would have approved it. So that brings us to our first point. The restriction's unenforceable. He said the developer would have approved it. I thought he said he wouldn't have taken any action, or my misunderstanding. He stated in his affidavit and in the evidence deposition that the fence didn't violate the law. It met the requirements, right? Yes. Okay, thank you. The restriction's unenforceable. The trial court erred in applying subdivision restrictions that were unenforceable due to a complete abandonment of the approval process. Illinois law holds that restrictions requiring approval must provide a functioning approval process, mechanism to enforcement. This case, our case, is on all fours with the Stanley and Bohnstadt case, 2019-11-2nd-18325. In that case, dealing with a detached garage, the court invalidated a restriction where the developer had abandoned oversight and no HOA was formed. This case is factually analogous to our case in restriction substance and Illinois law analysis. Here, the plaintiffs don't dispute that HOA has ever existed and that the developer has ceased reviewing plans. Thus, there was no mechanism for compliance rendering approval of the requirement unenforceable under that Stanley case. Counsel, the answer you may give might differ for each of the two counts, the covenant versus the private nuisance. But what relief are you seeking? Are you asking us to find that summary judgment was improvidently granted and remand the cause for further proceedings? Are you asking that judgment be entered in favor of your clients on appeal? All of the above, Your Honor, one or the other. We obviously think that summary judgment was inappropriate on both counts and one as it pertains to plaintiffs. We also disagree with the certain courts denying our motion for summary judgment on both counts one and two. Did that answer your question? Yes.  Going back to Stanley, there's no formal mechanism there. So the developer's signature prior to or at the time of construction of the fence, according to Illinois case law, would effectively be irrelevant. Why it would be irrelevant again is because the restrictions state that there's an automatic approval provision in there. In other words, if plans are submitted for anything, really, I mean, they could put up a movie theater in their backyard. And if the developer ignored it 20 days later, they're approved. Had your client reached out successfully for a developer and put the developer, one of the two gentlemen, on notice, would that have been sort of their path forward to have been ignored and then to proceed? Sure, Your Honor, it would have. They heard it on good authority from neighbors in the subdivision once they moved in, you know, how do we get this approved? Several neighbors told them absolutely clearly that the developers want nothing to do with you. In fact, we've tried to submit plans, and they've told us not to bother them. And that's bolstered by Mr. Comedian's testimony. The only allegation that's been proven in the plaintiff's complaint regarding count one is the fact that they did not have a slip of paper signed by the developer approving those plans at the time of construction. Subsequently, the automatic approval provision has been used by my clients, and the fence, as well as the pool that they've put in now, is approved. The second part, that the fence complies with the covenant. Did you say that the pool has been installed? Yes. Is that reflected in the record? It is. Okay. Yes, in the orders and in the briefs regarding motions to reconsider. And that was approved, I take it, by the city, but not by the developer? It was actually approved by the developer in that my client submitted plans, and they sent them to his house, and they were ignored for 20 days. Okay, so thank you. You bet. The fence complies with the covenant. I won't spend a heck of a lot of time on this point because it's pretty clear. We were able to track down the developer. I literally had to go knock on his door and try to persuade him to sit for an evidence deposition, and he did. And he was asked directly, does this fence violate it? No. What's the only prohibition within the restrictions on the material in which a fence can be constructed on? Chain link. This is a white vinyl privacy fence. And what's important to note, even after that, after the pool has been installed, the plaintiffs have initiated new litigation concerning the pool. The development further confirms the fence was intended and is now associated with the pool. You're going to hear argument that this intent that my clients had to attend the pool was fake. Well, that doesn't sound like an issue that's susceptible to being resolved in summary judgment, does it? Well, that's an excellent question. I would think not, Your Honor, because it is a fact not in dispute. However, I think they'll dispute that fact. It's been briefed that they don't believe my client in the sense that he intended to put a pool in before the fence. And Illinois law doesn't tell us you've got to have a fence before a pool or a fence, you know, or vice versa. But we submitted the bids that my client received prior to their closing on the house as proof. Moreover, going back to Bonestack, we cite that Forest Glen case where selective enforcement undermines the institution's validity. There are other fences in this neighborhood without pools, many of them. There are fences that are chain link. There are fences that are made out of various different materials. There are covenants that are being violated left and right, yet my clients are targeted. There's no private nuisance here. Illinois law provides us no real bright-line rule on what is a nuisance, particularly in the private sector. But it requires a very fact-specific interrogation or look into. What they are clear about is that the facts don't support nuisance claims based on speculative dangers or aesthetics. It requires a substantial and a reasonable interference with the use and enjoyment in the private sector. Aesthetics are not actionable. We cite Carol B. Hurst, Zimbabwe versus, I'm going to butcher this, Mirzwa, that state very unequivocally that aesthetic concerns are not actionable. You can't. And you're also not entitled to vision over my client's property line. And that's what we're dealing with. We're dealing with a driveway that has a 90 degree turn right around my client's property. They've suffered no actual harm. In the three years that this fence has been in, there's been no accidents and no reports of near misses. In Ward v. Kamarn, the Supreme Court held that conditions are not dangerous unless they present a clear, substantial, immediate hazard. The plaintiffs relied on an expert report that models theoretical dangers. But Illinois courts reject nuisance claims based on speculative harm. There's no substantial interference going to the Dobbs and Wiggins case about their views. Views are not actionable. In other words, if I have a home and somebody wants to put up a condo that blocks my view of the Illinois River or Lake Springfield, they can do that. The trial court wrongly found nuisance based on speculative safety concerns, unsupported by concrete evidence, or danger of injury. A brief look into their retained expert Michael O'Hearn's report. Again, we're going to speculation. You're going to hear the word blind corner. You've heard it in the briefs. That's the only place you heard it, because you won't see it in his report. What he's talking about is the limiting or shrinking of a sight line distance. It doesn't mean there's no sight. It's also based upon independent negligence of a third party, which is not my client's responsibility. He simply states that it reduces the sight line and may increase the risk of collision if a driver exceeds five to six miles an hour. He also fails to look at any other reasonable options that might limit, which is not my client's duty, other person's negligence. In other words, speed limit signs. Convex meters, things that we encounter every day in parking garages, in alleyways. I think I probably encountered no less than ten corners on my way here this morning. That sight line is limited by some sort of obstruction, whether it be man-made or a tree or a fence or a building. The claimants misapply Dobbs and Wiggins, asserting that it supports their nuisance claim, but merely reiterates that nuisance is a highly fact-specific inquiry. It does not authorize injunctions based on hypothetical risks. Again, O'Hearn is a hypothetical. The injunction, Your Honors, was an abuse of discretion. Even if the court believes a technical violation occurred, and that's what this was. Remember the piece of paper with no signature. That's a technical violation. It's been cured. This comes on a summary judgment, so the standard of review is not abuse of discretion, correct? De novo. And metaphorically speaking, when I say abuse of discretion, I don't mean that literally in terms of law. But they end up granting the injunction for full fence removal. There's no irreparable harm. They plead diminution of value, but there's nothing in the record to substantiate that. The only thing in count one is lack of a piece of paper, and in count two is speculative. Speculative hypotheticals that may, if a third party neglects their duty, and Illinois case law is clear, that a property owner, a budding property owner, has the right to rely on that third party's duty that they should not violate. In other words, if I'm Mr. Holmes, I can rely that FedEx isn't going to come flying up that driveway. It's not my duty to prevent that or to attempt to prevent that. For the following reasons, the defendant's appellants respectfully request this court to reverse the circuit court's ruling on summary judgment and grant it for defendants. At the least, we ask that you remand it so that we can figure out some other option or have a trial on the facts. Thank you very much. If you've got any other questions, I'd be happy to answer them. Thank you, counsel. All right, Ms. Glossy. May it please the court and counsel, I want to go back a little bit because I think there has been a blurring of certain facts in the record. The hearing on the cross motions for summary judgment was held February 20th of 2024, and the judgment for the plaintiffs was entered March 20th of 2024. So, first off, what were the undisputed facts at the time of trial preceding the entry of the judgment? One, the defendants knew about the subdivision restrictions prior to and at the time they purchased their home. Two, defendants didn't feel like they had to contact anybody before installing a fence. Did they contact your client? No. Are you aware or is there information in the record that they contacted neighbors to advise them that they were planning on? My client, the Grobs, went over once they saw things being delivered, and there was a conversation about we're putting in a fence, and my client, Mr. Grobs, saw what type of fence it was, and he said, couldn't you put in some kind of a see-through fence? And I think the testimony was, no, this is what it is we're putting it in. So, from the time, you know, there was a cease and desist letter set October 20th of 21, to the time of judgment, the defendants had never submitted pool and fence construction plans to the developers. And I think it's important to look at that restriction. I'm not going to quote it verbatim because I can't, but the subdivision doesn't allow fences. Counsel, you recognize that the record makes it relatively clear that these developers didn't want the plans, didn't intend to look at them, that that's not really an issue and controversy, is it? I don't think so, but I think it's important to, in terms of the trial court's ruling and the defendant's conduct in this case in, you know, being faced with judgment. There's not supposed to be any fences. You can have a fence in connection with a pool, as long as those plans for both are approved by a developer. No, I understand. You referenced the defendant's conduct. But we have a scenario whereby the subdivision's clearly out of compliance with enforcement. I think the record's relatively clear. You've got developers who've made it clear they no longer want to be involved, and the subdivision has refrained from creating its own governing body. So, your comment about the defendant's conduct, other than trying to put a fence around his yard, I'm stumped. I don't understand. Okay, I think the important point, and it goes to the defendant's enforceability argument, and that is where this situation here is different than that Stanley case, is that all the defendants had to do was say, here's our plan, you know, for a pool, and here's our plan for a fence around the pool, Mr. Developer. And if, as he seems to have carried on, I don't want to mess with this, all you had to do was wait 20 days, and by default, they would have won. Correct. I think that's clear. But they didn't do that. I think that's clear. The troubling aspect is, you're seeking to enforce these covenants in the governing body, but there is no governing body, and the subdivision is, not to overstate it, but wildly out of compliance with enforcing any of the covenants. So, that's a difficult argument for this court. Well, I think the trial court looked at it from the standpoint of, all they had to do was write a letter setting forth their plans, and they did not. The whole point is that this idea of a pool, you know, there was no pool at the time of judgment. There were no permits at the time. At the time of trial, it was the defendant's statement that they intended to put in a pool. Isn't that at least a question of fact that can't be resolved at summary judgment? I think the, I guess, if you would say that, you know, you can only put in a fence if it's in connection with a pool, then does the mere intent, the statement, well, I intend to do this someday, somehow put you within that language, I think that's a legal issue and not a factual issue. Well, that presumes that one has to precede the other. I don't know why we would conclude that. People might build a pool first and then build a fence. They might build a fence first and then put in the pool. They might do them at the same time. Even if it's all part of one plan, the sequence could be different. I don't know why we would draw the assumption of some importance from that sequence. I think the trial court, you know, and obviously you don't have the record before you. You know, there was no transcription of the argument. But the argument wouldn't be evidence anyway. So all we have is what the trial court had in terms of the record evidence. We have the same record. And they have the record that these folks had over two years, over two years, to do something if, in fact, they were really going to put in a pool and they had done nothing. Do what? What do they have to do? Put in a pool. Get permits for a pool. In the middle of litigation where the whole thing is being challenged? That's a reasonable expectation? Well, I think that it's no less unreasonable than when they received a cease and desist order. That, hey, you can't just put up this fence. Fences aren't allowed in a subdivision. But they'd already started. No. The materials were there. Right. And nothing was done and no contact was made. It was just silence. A little more expensive to take out a pool after you put them in. Right. And if they had bothered to do something in October of, you know, 2021, then maybe we wouldn't be in this position. Bothered to do something is hard, again, for this court to swallow. Well, we've got a subdivision, non-compliance developers who are done with this situation in terms of enforcing covenants and a non-existence of a governing body. You seem to put all of the eggs in a defendant's basket. It seems to be a real problem of where to go. What is the first step? You might put in the fence for safety reasons first before the pool. You might notify the neighbor. But this is so loosey-goosey, what's the defendant to do? I think do something more than just simply say we have an intent someday to put in a pool. In the absence of a governing body and a homeless association, who decides whether or not this family has a pool or not? Do you get the other people in the subdivision to get together and just take a vote? No, I think then you rely on the provision we did, is that we didn't have a homeowners association. You know, we filed suit in federal court because the restrictions gave us the ability to enforce the covenant. You know, and we look to the court, okay, here's the situation. They have put up this fence. We have the right to enforce the covenant, and it proceeded from there. So here's one of the things that concerns me, is that you want us to look at a certain timeline of evidence and ignore anything afterwards. So the record already suggests, and I would say that it sounds like it'd be at least a question of fact, whether the developer would have approved this even if asked, right? That it would have been probably no response. And then the later record develops, confirms it. Then we have the question of whether they really are going to build a pool or not. But if they subsequently did, it sounds like there are potentially different conclusions that could have been drawn as of the date of summary judgment. But the evidence, if that was improvidently granted, the evidence only seems to have strengthened your opponent's side of the record. I guess then it seems to me that you are not giving any consideration to my clients who are the neighbors. And they are left, we have a record of what happened, you know, before judgment. Here is a judgment, here's what existed. And then after expending two plus years, almost three years litigating, then they decide to put a fence or put in a pool. And, you know, we're supposed to be appealing just the judgment, not what might have happened afterwards. I get it. But the thing is, if that judgment was granted when there were competing issues of fact, all that other evidence is going to come in if it gets remanded. I don't think that it gets wiped off. And you've got issues here about, well, we don't think he intended to put in a pool. Well, that sounds like an issue of fact. Or it would have been denied anyway. Well, that sounds like that might be an issue of fact, meaning competing inferences can be drawn. If it was improvidently granted, this other evidence is still going to be mighty relevant when it's finally heard. And, you know, and I know I'm not supposed to throw a question at you. But, you know, I don't understand if how I have a judgment here, and I'm supposed to, you know, be entitled to some type of enforcement of that judgment. How then, you know, what are the rules if I get it? I get it. Confined to what they decided to do once they realized they lost and they scramble to kind of undo the judgment and we are left hanging. The problem is if those points, whether there would have been a pool installed, whether that was their intention and whether the developer would have approved it or not, those were already things at issue in the summary judgment that I don't understand how that can be conveyed as properly decided at summary judgment. So all those subsequent developments, they had their roots in what was in front of the court. Well, I mean, the developer was, I don't know if counsel called him wishy-washy, if that's the right term. Again, it doesn't sound like a summary judgment determination, does it? Yeah, well, and that's our point is that, you know, they had an easy out because they had this default provision. You know, we could have, they could have sent in the plans for a pool and a fence and, you know, by default if it had been entered. And then if we felt for some reason it didn't comply with the, you know, with the covenant, we could have litigated that. But they didn't do so. Did the trial court ever even address their affirmative defenses? Meaning the estoppel, the waiver, the failure to enforce? Even if you think that you're right on the fact that they didn't have preapproval, those things still have to be addressed. Did the trial court even do that? Well, I think the one thing I would, I can tell you is on this idea of there are, you know, a handful of other fences. But there was no evidence presented to the trial court of whether or not there had been variances granted or, you know, some circumstances or whether there had been any enforcement. It is just, well, there's a fence over here on this street and that street. Well, it was, you couldn't, I mean, referring to the trial court, they really couldn't compare that. Are you telling me that there are different inferences that can be drawn from that evidence? Because that's not a great argument in defense of separate judgment. Well, but it's the truth. You know, there was no, with regard to their affirmative defense, they did not present any evidence that there was somehow this, that they were being singled out for enforcement. There's not even an issue of fact as to those affirmative defenses. But didn't they have a duty to bring some evidence? I thought there was evidence. We know how many, we know about all these other instances. Well, they, I guess my answer would be that, you know, and this is, you know, based upon my own knowledge, I know of a couple of them that there had been more or less a variance granted. They could have called those homeowners. Well, you didn't put that evidence in either. That wasn't in the record. You didn't put that evidence in either. It's their burden on their affirmative defense. No, it's your burden as the movement. It's always your burden as the movement to show that there is no issue as to the issues laid out in their affirmative defenses. I guess I go with what was contained within the motion for summary judgment, and there was nothing raised with regard to the prior affirmative defenses. Well, they didn't, I mean, there was discussion and there was evidence about the other properties where there was violations of the fencing, right? I don't recall that. I mean, there were many hearings before then. But I can't sit here to say in some type of bystander fashion that, you know, exactly every subject that was talked about. I'm not talking about talked about, I'm talking about what was the evidence submitted to the court. And there was evidence that there was other violations in the subject. There was argument made. There was no evidence. Wasn't it in the form of a deposition and there was nothing contrary to that deposition testimony? Isn't that uncontroverted evidence? I don't think Mr. Kermene addressed the other fences. I don't think he was asked about the other, you know, the other fences. But you understand, though, as a moving party, you can't say it was their obligation to prove their affirmative defenses. The pleadings stand as uncontradicted until you contradict them. Correct. And to me, we raised the issues in the summary judgment. They raised their issues and none of it included these affirmative defenses as now laid out. So maybe you could turn to the nuisance point. Isn't the whole issue with site obstruction due to the fact that the Crobs house is essentially behind the defendant's house? Yes. It doesn't have road frontage other than its driveway. Yes. Have you seen the pictures? Yeah. And so the house itself, the defendant's house itself obscures some part of the driveway. Just by virtue of the fact that it's situated closer to the road than your client's house. I don't think that the problem is that the defendant's house somehow obscures the plaintiff's view. It is that hairpin curve that is the issue, you know, and... The curve that probably would slow most people just by its existence? I don't know. You know, one would have thought that. But once we had the video of the mail truck, you know, and if you look at the video of the mail truck, he comes whipping around that curve. And he was only going like 12 miles an hour and 14 miles an hour. But to see him go around that curve, it looked very, very fast. But what does that have to do with the defendant? That's third-party action. They did not raise that below. They did not raise that as a defense. Well, I don't know that it's a defense. It's the law. So if your claim is a claim for nuisance that's resting on essentially making the neighboring landowner responsible for the negligence of a third party, that's a problem. I'm not so sure that it is... Well, that was never addressed below. It was never raised below. But the law is that parties have to raise an issue. They may raise even additional arguments on appeal. But the issue was clearly there, right? They said they would not... that the law of nuisance doesn't make them responsible. You're talking about a sightline restriction. I'm not sure if that's how they argued it. You know, in my view, our case is differentiated from all of the other cases that they have cited in their brief. And we've tried to address them all because they all seem to be very fact-specific. Again, it goes to that they have put this solid structure right on the edge, right on the property line, and it has created a danger. Right, but there is no legal principle that would support the idea that when the structure itself doesn't inherently create a danger, and that it only is dangerous when in combination with the acts of a third party, that the landowner is responsible for that as a nuisance. So, I mean, this is your case. It's a de novo review at this court. We're talking about it now. What's the legal basis? Well, and I guess it's the legal basis is that, you know, we believe that the fence was a substantial invasion. And it was unreasonable to put it there because it had an effect upon the grobs like it would have upon a normal person of ordinary habits. What happens to your nuisance claim had they sent notice to the developer, fence is approved, fence is up? Are we here? Does that claim happen? No. So, i.e., the fence is there legally within the covenant? I think that I would have to look more closely, but I don't know that we would necessarily, or one would be necessarily foreclosed that just because something complies with the covenant doesn't mean it can't still constitute a nuisance. I mean, just... But you'd be competing with the fact that you have a subdivision approved fence. The man has the right to put a fence there. Right. I'm not saying it wouldn't make it harder. Right. I'm just saying that I don't think 100% we would be barred just by the approval. Right. So you'd go forward as well. Correct. Unless there was some resolution. The... Looks like your time's up. Do you want to summarize? All right. Thank you so much. Okay. Thank you. Council? Thank you. I'll be extremely brief, just to hit on a few things. Going back to Bondstat, in that case, they paused construction of the garage as a result of litigation. In this case, my clients were sued in December. The fence was installed in October. There are only too many pool companies that are willing to put in a pool in December. That two-year argument is because of this litigation, and as soon as we got into the judgment phase and started getting some guidance from the court, just as Bondstat did, construction on the pool resumed. Yes, it took two years. There's a lot of briefs. You guys have the record. It's over 1,000 pages long. These things have been briefed ad nauseum. Going back to... Does the record show that you advanced the issue raised in your affirmative defense, the waiver and estoppel, in opposition to summary judgment? Absolutely, Your Honor. It's been couched. It was born of their complaint, and it has been couched and elaborated on since the outset. You know, obviously, with Elastic, we're arguing selective enforcement and all those things, and as this case sort of metastasized, those arguments got elaborated on further and further, culminating in this appellate brief, where we have the opportunity to really dig in and elaborate. But those were born of their complaint and nurtured throughout this entire litigation. So what evidence of selective enforcement was before the trial court at the time it ruled on summary judgment? So the evidence of Don Cormean's... The evidence deposition of Don Cormean's existed, in which he was asked if he has approved other offenses that don't conform with the restrictions. And he said, yes. I think he was talking about the... You've got to go back on my memory here. I think he was talking about that initial offense that's right behind the Elizabeth Point sign that I discussed in my argument. That's chain link. I don't know if it's exactly chain link, but it's something that doesn't comply, and it's definitely without a pool. He said that he did approve that. That was a long time ago in the initial phase of the development. He said since then, unequivocally, that he wants nothing to do with it, and that he believes that since his interest in the subdivision is divested, that it's not his place to get involved. And he said that unequivocally, I approved these restrictions with very clear instructions on how to develop and how to start the HOA, and we did that with the intent that they would do that. Now we don't have one, so we're in the ballpark of Bonestead. Counsel, don't you have testimony and depositions and affidavits from the plaintiffs acknowledging that there's offenses not in compliance? I'm certain that we do. Again, testing my memory, we did take all the plaintiff's depositions, and yes, I think I can answer that, absolutely. Okay, we talked about this mail truck, and your Honor's picked up on it. I mean, my client can't stop a FedEx truck from traveling from 12 to 13, and the court's going to allow that. My client's, I guess the bottom line is that they've done everything they possibly could since the onset of this install to prevent being here. They gathered intel from their neighbors. Neighbors said developers want nothing to do with it. That's true. It was bolstered by one of the developers. I guess what the court has done in granting this summary judgment is enable the plaintiffs to have a veto power on anything that they don't approve of, and that's not in conformity with Illinois law. Thank you very much. Well, I'll ask this one just to let you address this, and I think you probably have to some extent, but your clients did fail to write the letter, mail it off, and the argument seems to be because the idea of doing that would be fruitile. Absolutely correct. Do you want to expand on that? Yeah. On the good authority, if you look at my client's deposition, he talks about in detail the conversations that he had with neighbors about how do I get a hold of these guys. Some of the neighbors didn't even know their names. Is there an HOA? And I think one of the persons that he asked said, in fact, they hung up on me and said, this isn't the right place. Yes, I think one of them said, we don't want anything to do with you and slammed the phone down or something to that effect. So, yes, it was their good faith belief that it would have been futile. And if you want me to touch on the fact that they continued building after the cease and desist, again, on good faith belief, it has been backed up by the record in this development of the argument that their fence complies with the restrictions. As it sits right now and as it sat right after its construction, it did not violate the restrictions. That's proven by the developer's testimony. Thank you very much. All right. Thank you, counsel and both counsel. We will stand in recess and issue a decision in due course.